1
2
3          UNITED STATES DISTRICT COURT
4          NORTHERN DISTRICT OF CALIFORNIA
5
6    CHASSIN HOLDINGS CORPORATION,          Case No.  15-cv-02294-MEJ
                        Plaintiff,
7
                                            **ORDER RE: MOTION TO DISMISS**
8              v.
                                            Re: Dkt. No. 39
9    FORMULA VC LTD., et al.,
                        Defendants.
10
11
12                        **INTRODUCTION**
13          Plaintiff Chassin Holdings Corporation ("Plaintiff") seeks to recover damages resulting

14   from alleged fraud, violations of securities laws, and contractual and fiduciary breaches committed

15   in the solicitation of Plaintiff's financial investments.  After discovery commenced, the parties

16   stipulated to adding Andrey Kessel as a Defendant.  Kessel now moves to dismiss pursuant to

17   Federal Rule of Civil Procedure 12(b)(2), on the grounds that  the Court lacks personal jurisdiction

18   over him.  Dkt. No. 39.  Plaintiff filed an Opposition (Dkt. No. 44), and Kessel filed a Reply (Dkt.

19   No. 48).  The Court finds this matter suitable for disposition without oral argument and

20   **VACATES** the May 5, 2016 hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having

21   considered the parties' positions, relevant legal authority, and the record in this case, the Court

22   **DENIES** Kessel's Motion for the following reasons.

23                        **BACKGROUND**
24   **A.     Factual Background**

25          Defendant Renata Akhunova, a resident of California, is the managing director of Formula

26   VC Ltd. ("Formula VC"), a Cayman Islands company with its principal place of business in

27   California.  First Am. Compl. ("FAC") ¶ 10, Dkt. No. 34.  Formula VC directly controls Formula

28   VC Fund I GP, L.P. ("Formula GP"), which is a Cayman Islands partnership with its principal

United States District Court
Northern District of California

place of business in California. *Id.* ¶¶ 12-13.  Akhunova is a managing partner of Formula GP, and Defendant Andrey Kessel, a resident of the United Kingdom, is its second managing partner. *Id.* ¶¶ 10-11.  Akhunova and Kessel formed and managed Formula VC and Formula GP for the purpose of raising capital from a group of investors to invest in a diverse portfolio of start-up companies. *Id.* ¶ 1.

Plaintiff is a British Virgin Islands corporation with its headquarters in Tortola, British Virgin Islands, and principals located in Russia. *Id.* ¶ 15; Opp'n at 11.  Between March 2012 and February 2013, Akhunova and Kessel met with Plaintiff's representatives to discuss a potential investment as a Limited Partner in Formula VC I Fund, L.P. ("Formula LP"), which would be an "exclusive, private club" for making investments in high-tech start-ups. FAC ¶¶ 1, 17.  Formula LP is a limited partnership organized under the laws of the Cayman Islands, with its principal place of business in California. *Id.*, Ex. A (Formula Fund Limited Partnership Agreement).[1] Formula GP was the sole general partner of Formula LP. *Id.* ¶ 1.  Akhunova and Kessel represented that they would obtain additional Limited Partners and that Formula LP would invest in dozens of different start-up companies. *Id.* ¶ 19.  By email dated August 8, 2012, Akhunova represented that there could be nine Limited Partners "with the possibility to increase the number of participants," and further represented that she would take all reasonable efforts to find additional Limited Partners—at least several more—and that those partners would be subscribed within a matter of months. *Id.*  Akhunova stated that the total size of the fund would be $60 million. *Id.*

Based on Akhunova's and Kessel's representations, Plaintiff agreed to become a Limited Partner of Formula LP, with an initial aggregate capital commitment of $20 million. *Id.* ¶ 23. Plaintiff executed the Amended and Restated Limited Partnership Agreement for Formula VC Fund I, L.P. (the "LP Agreement") on February 25, 2013.  *Id.*, Ex. A (the Agreement, hereafter cited as "Agmt.").  The purpose of Formula LP is stated in the LP Agreement as follows: "to

---

[1] *See also* Compl. ¶ 13, Dkt. No. 1 ("Formula VC Fund I, L.P. ('Formula LP') is a Cayman Islands limited partnership doing business in California and with its principal place of business at 2735 Sand Hill Road, Menlo Park, California 94025.").  Although this allegation is not in Plaintiff's FAC, it does not appear to be disputed.

United States District Court
Northern District of California

invest in a diversified portfolio of investments with the primary focus on early stage technology ventures . . . ." Agmt. § 3.1. Formula LP is restricted in the investments it can make and is, among other things, required to "seek to diversify its investment portfolio by investing in at least twelve (12) Portfolio Companies." *Id.* § 3.2.2. The Management Fee for Formula LP is 2.5% of all contributions. *Id.* § 13.1.

Plaintiff alleges Akhunova and Kessel never intended to make good on their promises and made them solely for the purpose of attracting investment money so that they could take a large salary from "managing" a fund and raise their personal profiles as venture capitalists. FAC ¶ 3. While under Akhunova and Kessel's control, Formula LP has made investments in only two companies and has attracted no new Limited Partners. *Id.* ¶ 29. Of the $3,250,000 that Plaintiff has contributed to Formula LP thus far, only $2,416,918.98 has been invested and, of this amount, more than $1.6 million was invested in 500 Startups II, L.P., an independent fund that does—for a fee of its own—what Akhunova and Kessel promised Formula LP would do. *Id.* ¶ 3. Meanwhile, Akhunova and Kessel have taken management fees in the amount of $750,000 and received reimbursement of tens of thousands of dollars. *Id.*

Formula LP ran out of cash in early 2014. *Id.* ¶ 5. Akhunova informed Plaintiff that Formula LP lacked sufficient liquidity to satisfy its current liabilities, including its capital call obligations to 500 Startups II, L.P, risking default under the terms of its investment agreement. *Id.* Following discussions with Plaintiff, Akhunova and Kessel caused Formula GP to resign its position as the sole general partner of Formula LP on April 24, 2015. *Id.* ¶ 6.

**B.      Procedural Background**

On May 21, 2015, Plaintiff filed its original Complaint against Formula GP, Formula VC, Formula LP, and Akhunova. Dkt. No. 1. Plaintiff voluntarily dismissed Formula LP on June 22, 2015. Dkt. No. 12. On December 1, 2015, Plaintiff filed a Motion for Leave to File an Amended Complaint and Permissive Joinder. Dkt. No. 30. In its Motion, Plaintiff stated it was aware of some of Kessel's dealings with respect to Formula LP, but it decided not to name him until it received further information through discovery, through which it learned Kessel was involved in all aspects of the management and operation of Formula LP, worked closely with Akhunova as

3

one of the two managing partners at Formula GP, and participated in the fund's efforts to obtain Plaintiff's investment commitment. *Id.* at 4. On December 8, 2015, the parties filed a Stipulation to Motion to Amend the Complaint and Permissive Joinder, in which Formula VC, Formula GP, and Akhunova consented to the entry of the amended complaint and the joinder of Kessel. Dkt. No. 31. The Court granted the parties' stipulation that day. Dkt. No. 33.

Plaintiff filed the FAC on December 9, 2015, naming Formula GP, Formula VC, Akhunova, and Kessel as Defendants. It brings six causes of action: (1) Fraud in the Sale of Securities under Securities and Exchange Commission ("SEC") Rule 10b-5; (2) Breach of Contract; (3) Deceit; (4) Fraud in the Sale of Securities under California Corporations Code section 25401; (5) Breach of Fiduciary Duty; and (6) Violation of California Business and Professions Code section 17200. FAC ¶¶ 70-126.

Kessel now moves to dismiss, arguing that he does not have sufficient contacts with California for the Court to exercise personal jurisdiction over him. Mot. at 3.

## LEGAL STANDARD

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To make this showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [plaintiff's] favor." *Love*, 611 F.3d at 608. Otherwise, a defendant could prevent a plaintiff from meeting his burden simply by contradicting the plaintiff's affidavits. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

Courts properly exercise personal jurisdiction over a defendant "if it is permitted by a long-arm statute and if the exercise of jurisdiction does not violate federal due process." *Pebble Beach Co.*, 453 F.3d at 1154. "Federal courts ordinarily follow state law in determining the

United States District Court
Northern District of California

1   bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746,

2   753 (2014).  Because "California's long-arm statute allows the exercise of personal jurisdiction to

3   the full extent permissible under the U.S. Constitution," a court's inquiry centers on whether

4   exercising jurisdiction comports with due process.  *Id.*; *see* Cal. Civ. Proc. Code § 410.10 ("A

5   court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of

6   this state or of the United States.").  Due process requires that nonresident defendants have

7   "minimum contact" with the forum state such that the exercise of personal jurisdiction "does not

8   offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326

9   U.S. 310, 316 (1945) (internal quotations omitted).

10        A court may exercise either general or specific jurisdiction over a nonresident defendant.

11   *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  General

12   jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts

13   with the forum.  *Id.* at 415.  If general jurisdiction exists, the forum has jurisdiction over the

14   defendant regardless of where the events giving rise to the litigation occurred.  *Id.*

15        If a defendant's contacts with the forum are not sufficient to establish general jurisdiction,

16   specific jurisdiction may still be shown.  The Court may assert specific jurisdiction over a

17   nonresident defendant if three requirements are met:

18           (1) The non-resident defendant must purposefully direct his
19           activities or consummate some transaction with the forum or
             resident thereof; or perform some act by which he purposefully
20           avails himself of the privilege of conducting activities in the forum,
             thereby invoking the benefits and protections of its laws;

21           (2) the claim must be one which arises out of or relates to the
22           defendant's forum-related activities; and

23           (3) the exercise of jurisdiction must comport with fair play and
             substantial justice, i.e. it must be reasonable.

24   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).

25   The plaintiff bears the burden of demonstrating the first two prongs.  *CollegeSource, Inc. v.*

26   *AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If the plaintiff satisfies the first two parts

27   of the test, the burden shifts to the defendant to "to set forth a 'compelling case' that the exercise

28   of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462,

5

United States District Court
Northern District of California

476-78 (1985)).  While all three requirements must be met, in considering the first two prongs, "[a] strong showing on one axis will permit a lesser showing on the other."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc).

## DISCUSSION

Kessel argues the Court cannot maintain general or specific personal jurisdiction over him. Mot. at 5-6.  Plaintiff does not address Kessel's general jurisdiction arguments, and the Court therefore finds it reasonable to assume he lacks the kind of substantial and continuous contacts necessary to sustain a finding of general jurisdiction.  Thus, the Court focuses on whether it may exercise specific jurisdiction over Kessel.

Kessel argues he did not purposefully direct any activities at residents of California and no such activities gave rise to any injuries in California.  *Id.* at 7.  Kessel notes the allegations in the FAC against him relate to investments by Plaintiff, a British Virgin Islands business company, in Formula LP, which is organized under the laws of Cayman Islands, and the only party that is a resident of California is Akhunova.  *Id.*  Kessel maintains that all meetings he had with Plaintiff's representatives took place in Moscow, he never communicated with Plaintiff or its representatives while they were in California, and Plaintiff does not allege that his purported mismanagement of Formula LP occurred in California.  *Id.* (citing Kessel Decl. ¶¶ 11-12, Dkt. No. 40).

In response, Plaintiff argues Kessel is subject to personal jurisdiction under the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. §§ 78a-78kk, as the relevant inquiry where violations of federal securities law are alleged is whether the defendant has connections to the United States, not just California.  Opp'n at 4.  As Plaintiff alleges securities law violations by Formula GP and Formula VC, and those corporate defendants have not challenged the Court's jurisdiction, Plaintiff maintains its allegations establish personal jurisdiction over Kessel by virtue of his control over them.  *Id.* at 5.  Plaintiff further argues that because the Court has personal jurisdiction over Kessel with respect to the federal securities law claim, it may properly exercise jurisdiction with respect to Plaintiff's state law claims under the doctrine of pendent personal jurisdiction.  *Id.* at 7.  In the alternative, Plaintiff argues Kessel is subject to specific personal jurisdiction under the traditional personal jurisdiction analysis.  *Id.* at 7-12.

**A.      Jurisdiction for Claims Brought Under the Securities Exchange Act**

Jurisdiction for claims brought under the Securities Exchange Act is governed by Section 27 of the Act.  15 U.S.C. § 78aa.[2]  "So long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985).  Thus, because Plaintiff states a claim for violations of SEC Rule 10b-5 against Kessel (*see* FAC ¶¶ 70-76), and no named Defendant has challenged the sufficiency of Plaintiff's allegations, Section 27 applies, and Plaintiff need only show that Kessel had minimum contacts with the United States.  *See Vigman*, 764 F.2d at 1316 ("We hold, therefore, that so long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) ("[W]e adhere to our decision in *Vigman* that, when a statute authorizes nationwide service of process, national contacts analysis is appropriate.").

However, "the Court must still consider due process and 'traditional notions of fair play and substantial justice.'"  *Kexuan Yao v. Crisnic Fund, S.A.*, 2011 WL 3818406, at *12 (C.D. Cal. Aug. 29, 2011) (quoting *Int'l Shoe*, 326 U.S. at 320).  "Even in a Section 27 situation, 'th[e] Court must ascertain whether it is reasonable for this Court to exercise its jurisdiction over [defendant].'"  *Id.* (quoting *MTC Elec. Tech. Co., Ltd. v. Leung*, 889 F. Supp. 396, 400 (C.D. Cal. 1995) (brackets in original)); *see also Pacific Life Ins. Co. v. Spurgeon*, 319 F. Supp. 2d 1108 (C.D. Cal. 2004) (considering due process in a declaratory relief case where jurisdiction was conferred by Section 27).  Thus, to establish specific jurisdiction consistent with the due process clause for claims under the Act, courts look to the requirements of the *Schwarzenegger* factors.  *See S.E.C. v. Ficeto*, 2013 WL 1196356, at *4 (C.D. Cal. Feb. 7, 2013) (analyzing the *Schwarzenegger* factors to determine specific jurisdiction under the Act).

---

[2] Section 27 provides: "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."  15 U.S.C. § 78aa.

1    "Because this is a securities fraud case, minimum contacts may be established either by

2    purposeful direction or purposeful availment." *Id.* (citing *In re LDK Solar Sec. Litig.*, 2008 WL

3    4369987, at *6 (N.D. Cal. 2008) (concluding in a securities case that the "conduct plaintiffs

4    identify contains elements both of purposeful availment and purposeful direction"); *Lyddon v.*

5    *Rocha-Albertsen*, 2006 WL 3086951, at *26 (E.D. Cal. 2006) (explaining that "[a] purposeful

6    direction analysis is most often used in suits sounding in tort, such as fraud")).  "The fraud aspects

7    of a securities case may establish purposeful direction, as in a tort case, while the transactional

8    aspects of a securities case may establish purposeful availment." *Id.*

9         1.    <u>Purposeful Direction and Purposeful Availment</u>

10    The purposeful direction requirement is analyzed under the "effects" test of *Calder v.*

11    *Jones*, 465 U.S. 783 (1984), which requires defendants to have "(1) committed an intentional act,

12    (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

13    suffered in the forum state."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

14    Taking Plaintiff's allegations as true, the Court finds Kessler committed an intentional act.

15    Plaintiff alleges that, together with Akhunova, Kessel formed three entities—Formula VC,

16    Formula GP, and Formula LP—and established this District as their principal place of business.

17    FAC ¶¶ 1, 10, 12-13.  Through these entities, Plaintiff alleges that between March 2012 and

18    February 2013, Kessel met with Plaintiff's representatives to discuss a potential investment in

19    Formula LP, that Formula LP would invest in dozens of different start-up companies, and

20    represented that he (and Akhunova) would obtain additional partners. *Id.* ¶¶ 1, 17, 19.  Further,

21    Plaintiff submits evidence establishing that Akhunova and Kessel established bank accounts for

22    Formula LP in this District and it was into these accounts that Plaintiff wired its investments in

23    Formula LP.  *See* Kampfner Decl., Ex. B, Dkt. No. 45-2 (Wells Fargo bank statements stamped

24    "Wells Fargo Bank, N.A., Stevens Creek Office, 65 N. Winchester Boulevard, Santa Clara, CA

25    95050").  Investments made by Formula LP were paid from these bank accounts, and management

26    fees paid to Formula LP were paid from these bank accounts.  *Id.*

27         Further, personal jurisdiction exists in a case arising under the Act "if the plaintiff makes a

28    non-frivolous allegation that the defendant controlled a person liable for the fraud."  *San Mateo*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Cty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992).

2    Thus, allegations that a defendant exercised a significant degree of control over a corporate entity

3    provide a basis for jurisdiction.  *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at

4    *15 (C.D. Cal. June 6, 2008) (finding personal jurisdiction over securities fraud claims brought

5    against an officer of a corporation also alleged to have committed securities law violations, despite

6    the fact that the officer lived and worked in Germany (citing *San Mateo Cty. Transit Dist.*, 979

7    F.2d at 1358)).  Here, Plaintiff alleges Kessel managed both Formula VC and Formula GP and

8    acted as a managing director of Formula GP, and both have their principal place of business in

9    California.  FAC ¶¶ 1, 11-13.  Akhunova also confirmed in her sworn discovery responses that

10   Kessel managed Formula GP and Formula VC.  *See* Kampfner Decl., Ex. A (Resp. to Interrog.

11   No. 4), Dkt. No. 45-1.  Kessel denies that he had any control over any of the other Defendants.

12   Reply at 7.  However, any such conflicts must be resolved in Plaintiff's favor.  *Love*, 611 F.3d at

13   60.  Based on this record, the Court finds Plaintiff has carried its prima facie burden to establish

14   that Kessel purposefully directed the alleged fraud at the United States.

15          Next, courts have found that the transactional aspects of securities fraud establish

16   purposeful availment.  *In re LDK Solar Securities Litigation* held, for example, that the defendants

17   "purposefully availed themselves of the forum by taking advantage of this nation's laws and its

18   capital markets."  2008 WL 4369987 at *6; *see also Kairalla*, 2008 WL 2879087, at *15 (finding

19   personal jurisdiction established over German defendant in securities fraud case where plaintiff

20   alleged the defendant "trades in the United States securities markets, purposefully availing himself

21   of the protections and privileges of the United States, and that [defendant] has conducted business

22   with . . . executive offices in Santa Ana, California."); *S.E.C. v. Ficeto*, 2013 WL 1196356, at *6

23   (C.D. Cal. Feb. 7, 2013) (finding the foreign defendant purposefully availed himself of the forum

24   by injecting false information into the domestic over-the-counter market through a market

25   manipulation scheme).

26          As noted above, Plaintiff alleges Akhunova and Kessel formed Formula VC, Formula GP,

27   and Formula LP with this District as their principal place of business, met with Plaintiff's

28   representatives to discuss a potential investment in Formula LP, and thereafter established bank

9

accounts for Formula LP in this District, through which Plaintiff wired its investments and Formula LP made investments and received management fees.  Plaintiff further alleges Kessel breached his fiduciary duty to Formula LP by failing to put into place appropriate controls concerning Formula LP's cash, causing it to pay management fees and reimburse expenses in excess of those permitted by the LP Agreement for their ultimate personal benefit, failing to meet the fund objectives stated in connection with the solicitation of Plaintiff's investment, and failing to satisfy the reporting requirements set forth in the LP Agreement and consistently failing to meet reporting deadlines.  FAC ¶¶ 120-22.

Kessel argues that no effects from the alleged fraud were felt in the United States because Plaintiff has no presence in California and any alleged damages occurred elsewhere.  Reply at 11.  However, purposeful direction requires "foreseeable harm" in the United States, not "foreseeable actual damages."  *Ficeto*, 2013 WL 1196356, at *5-6 (rejecting defendant's argument that jurisdiction did not exist because the "location of the damages" was elsewhere and finding purposeful direction where defendant mislead the government, thereby constituting a "foreseeable harm" in the United States).  Plaintiff alleges that Kessel, through partnerships located in California, committed fraud and breach of contract regarding the sale of securities, deceived Plaintiff by making false statements with regard to Plaintiff's investment in Formula LP, and breached his fiduciary duty in the conduct of the business of Formula LP, which has its principal place of business in California.  The Court finds these allegations satisfy the requirement of foreseeable harm.

Based on this analysis, the Court finds Plaintiff has sufficiently shown that Kessel purposefully availed himself of the relevant forum, the United States, so as to establish personal jurisdiction under the prima facie standard.

2.     Kessel's Forum-Related Activities

After purposeful direction, the second requirement for specific jurisdiction is that the claim "arises out of or relates to the defendant's forum-related activities."  *Schwarzenegger*, 374 F.3d at 802.  This prong is satisfied if the plaintiff would not have been injured "but for" the defendant's conduct directed toward the forum.  *See Panavision Int'l*, 141 F.3d at 1322 (considering whether

1   plaintiff would have been injured but for defendant's conduct directed toward plaintiff in

2   California); *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003) (asking

3   but for defendant's contacts with California, would plaintiff's claims against defendant have

4   arisen). Here, Plaintiff invested its money in Formula LP, which Kessel and Akhunova chose to

5   locate in this District, and sent its money to the bank account Kessel and Akhunova set up for

6   Formula LP in this District. Plaintiff alleges Kessel and Akhunova failed to perform in

7   accordance with their promises with respect to the management of Formula LP. Without Kessel's

8   and Akhunova's actions, it is likely that Plaintiff would not have been injured. As such, Plaintiff's

9   claims arise out of Kessel's forum-related activities. The second element of the specific

10  jurisdiction test is met.

11          3.      Reasonableness

12          "Once it has been decided that a defendant purposefully established minimum contacts

13  with a forum, he must present a *compelling case* that the presence of some other considerations

14  would render jurisdiction unreasonable in order to defeat personal jurisdiction." *Dole Food*, 303

15  F.3d at 1114 (emphasis added; internal quotation marks omitted) (citing *Burger King*, 471 U.S. at

16  477). Courts consider seven factors, none of which is dispositive:

> (1) the extent of a defendant's purposeful interjection; (2) the burden
> on the defendant in defending in the forum; (3) the extent of conflict
> with the sovereignty of the defendant's state; (4) the forum state's
> interest in adjudicating the dispute; (5) the most efficient judicial
> resolution of the controversy; (6) the importance of the forum to the
> plaintiff's interest in convenient and effective relief; and (7) the
> existence of an alternative forum.

21  *Id.*

22          Kessel makes no attempt in his Motion to show that jurisdiction would be unreasonable,

23  and Plaintiff did not have an opportunity to respond to the arguments made in Kessel's Reply.

24  Regardless, the Court finds Kessel has not met his burden of showing that exercising personal

25  jurisdiction over him would be unreasonable.

26          As discussed above, taking Plaintiff's allegations as true, Kessel purposefully injected

27  himself into California by partnering with Akhunova to create three entities with their principal

28  place of business in California, through which they committed fraud. Kessel and Akhunova set up

United States District Court
Northern District of California

11

a bank account for Forum LP in California, received payments through that account, and, in contravention of their fiduciary duties, allowed improper disbursements from that California bank account to be made for their own benefits.

As to burden, the Court is mindful of the Supreme Court's admonition that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987).  However, although Kessel is no doubt burdened by having to defend this suit in a country where he does not reside, advances in modern transportation and telecommunications have significantly lessened the burden of litigation in distant forums.  *See CollegeSource, Inc.*, 653 F.3d at 1079.  "Courts routinely reject claims by foreign defendants that it would be too burdensome for them to defend themselves outside their home country, particularly when those companies 'use technology and transportation to carry on the business relationship at issue.'"  *Artec Grp., Inc. v. Klimov*, 2015 WL 9304063, at *6 (N.D. Cal. Dec. 22, 2015) (quoting *Pandigital, Inc. v. DistriPartners B.V.*, 2012 WL 6553998, at *4 (N.D. Cal. Dec. 14, 2012)).  Further, Kessel has secured competent counsel in this District to represent him; as such, if this factor weighs in favor of Kessel, it does so only slightly, "as it probably does in every case."  *Montana Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1183 (D. Mont. 2012) (jurisdiction not unreasonable where defendants had retained local counsel); *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 273 (E.D.N.Y. 2014) (finding it reasonable for defendants domiciled in India to defend against action in New York where they had retained local counsel).

As to the third factor, "[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist."  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (citation and internal quotations omitted).  However, "[a]lthough this factor is important, it is not controlling."  *Id.* (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984) ("If [this factor were] given controlling weight, it would always prevent suit against a foreign

United States District Court
Northern District of California

1    national in a United States court.")).  Kessel has presented no evidence of the United Kingdom's

2    particular interest in adjudicating Plaintiff's allegations, which weighs in favor of jurisdiction.

3    *Artec Grp.*, 2015 WL 9304063, at *6 ("Defendants have not identified a conflict with any other

4    sovereignty, which weighs in favor of jurisdiction.").  Further, under the fourth factor, California

5    has a strong interest in having this case adjudicated in California given that the FAC involves

6    entities with their principal place of business in this District and many of Plaintiff's allegations

7    took place here.

8         As to the most efficient judicial resolution, the Court notes that Kessel is a resident of the

9    United Kingdom, Formula LP was registered in the Cayman Islands, and Plaintiff is a British

10   Virgin Islands corporation with principals located in Russia.  However, none of the other named

11   Defendants challenged personal jurisdiction—on reasonableness grounds or otherwise—meaning

12   they would remain in this forum to litigate the same claims that Plaintiff would have to bring

13   against Kessel elsewhere.  "To arbitrarily sever these claims for adjudication in different districts

14   risks incongruous results as well as problems with judicial economy.  Judicial economy favors this

15   forum at this point, and the fact that [Plaintiff] brought its claims in this forum further imbues

16   California with an interest in the resolution of these claims."  *United Tactical Sys. LLC v. Real*

17   *Action Paintball, Inc.*, 108 F. Supp. 3d 733, 750-51 (N.D. Cal. 2015).  Further, although Kessel

18   argues most of the evidence relating to his actions is located in England, Reply at 13, this factor is

19   no longer heavily weighted in light of modern technology.  *Harris Rutsky*, 328 F.3d at 1133.

20        As to the importance of this forum to Plaintiff's interest in convenient and effective relief,

21   Plaintiff maintains California is essential to its interests because "[i]t would be highly

22   inconvenient for Chassin to have to litigate the same issues in two different parts of the world and

23   would render the relief it seeks less effective than if it is permitted to obtain all relief in this single

24   forum."  Opp'n at 12.  The Court agrees and finds this factor weighs in favor of exercising

25   jurisdiction.  And, even if Kessel were to present evidence to the contrary, the Ninth Circuit has

26   held this factor is not of paramount importance.  *See Dole Food*, 303 F.3d at 1116.

27        Finally, the Court considers the existence of an alternative forum.  Although Kessel bears

28   the overall burden to show that exercise of personal jurisdiction would be unreasonable, Plaintiff

13

United States District Court
Northern District of California

"bears the burden of proving the unavailability of an alternative forum." *Harris Rutsky*, 328 F.3d at 1133-34 (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), *holding modified on other grounds by Yahoo! Inc.*, 433 F.3d 1199). Plaintiff concedes that the United Kingdom "may provide an alternative forum for certain claims against Mr. Kessel," but "the claims which Chassin could bring and the relief available would likely differ. This would make the UK not only an inferior forum, it would also increase Chassin's burden in having to pursue separate substantive claims in separate forums." Opp'n at 12. However, this factor addresses the availability of an alternative forum, not necessarily the best forum. Regardless, although an alternative forum does likely exist, based on the other factors, it is likely not the most convenient or even practicable to conduct litigation there, given that Akhunova resides in this District and the two entity Defendants have their principal places of business here. Accordingly, this factor is neutral.

Based on the record before it, the Court finds Kessel has failed to show the exercise of personal jurisdiction by this Court is unreasonable. Accordingly, specific personal jurisdiction exists over Kessel with respect to Plaintiff's claims for violations of SEC Rule 10b-5.

## B.      Pendent Personal Jurisdiction

Plaintiff argues the Court may also exercise jurisdiction over Kessel with respect to its state law claims. Opp'n at 7. The Court agrees.

The Ninth Circuit has adopted the doctrine of "pendent personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). Under that doctrine, if a district court has personal jurisdiction over federal claims, "then it may, in its discretion, exercise pendent personal jurisdiction over the state-law claims contained in the same complaint." *Id.* For exercise of pendent personal jurisdiction to be proper, it must "arise[ ] out of the same nucleus of operative facts" as the federal claim over which the court has personal jurisdiction. *Id.* at 1180. "Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id.* at 1180-81. The decision to exercise pendent personal jurisdiction is within the discretion of

the district court and depends on "considerations of judicial economy, convenience and fairness to litigants." *Id.* at 1181 (quoting *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C. Cir. 1977)). Claims are sufficiently related for purposes of pendent personal jurisdiction when a plaintiff "'would ordinarily be expected to try them all in one judicial proceeding.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1359 (9th Cir. 1988) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

All of the claims in Plaintiff's FAC share the same common nucleus of operative fact— they all relate to alleged promises Kessel and Akhunova made in soliciting Plaintiff's investment in Formula LP and their failure to fulfill those promises. As a consequence, it would be highly inefficient for these claims to be litigated in this Court against Formula GP, Formula VC, and Akhunova, together with the SEC Rule 10b-5 claims against Kessel, while requiring that Plaintiff pursue its remaining claims against Kessel elsewhere. *See Action Embroidery*, 368 F.3d at 1181 ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts."); *CollegeSource*, 653 F.3d at 1076; *see also In re JPMorgan Chase Derivative Litig.*, 2014 WL 5430487, at *15 (E.D. Cal. Oct. 24, 2014) (finding pendent personal jurisdiction over state law claims would be proper where jurisdiction existed over plaintiffs' claim under § 14(a) of the Securities Exchange Act of 1934. Thus, in considering judicial economy, convenience, and fairness to litigants, the Court finds it appropriate to exercise pendent personal jurisdiction over the state law claims against Kessel.

## CONCLUSION

Based on the analysis above, Kessel is subject to personal jurisdiction in this Court for all claims asserted against him, and therefore the Court **DENIES** his Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: April 19, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

15