UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASSIN HOLDINGS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FORMULA VC LTD., et al.,<br><br>Defendants. | Case No.  15-cv-02294-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ANDREY KESSEL**<br><br>Docket No. 84 |

## I.   INTRODUCTION

In this suit alleging fraud, claims against several defendants have been resolved.  As to the remaining claim against Defendant Kessel, a default was entered.  Pending before this Court is Plaintiff's motion for default judgment.  Docket No. 84 (Motion).  Plaintiff's four causes of action in the motion are: (1) fraud in the sale of securities under SEC Rule 10b-5; (2) deceit in violation of California Civil Code section 1709; (3) fraud in the sale of securities under California Corporations Code sections 25401, 25501, and 25504; and (4) breach of fiduciary duty.  Plaintiff seeks $1,762,500 in compensatory damages, plus interest. The Court grants Plaintiff's motion.

## II.   BACKGROUND

A.    Factual Background

Plaintiff Chassin Holdings Corporation is a British Virgin Islands business company, with its headquarters in Tortola, British Virgin Islands.  Docket No. 34 (First Amended Complaint) at ¶ 15.  Defendants Renata Akhunova and Andrey Kessel formed and managed Formula VC Ltd. (Formula VC), a Cayman Islands company with its principal place of business in California.  *Id.* at ¶ 10.  Formula VC is a general partner of Formula VC Fund I GP, L.P. (Formula GP), a Cayman Islands limited partnership with its principal place of business in California.  *Id.* at ¶¶ 12-13.

Formula GP, in turn, was the sole general partner of Formula LP.  *Id.* at ¶ 1.  At the hearing on December 15, 2016, Plaintiff clarified that, at all relevant times, Akhunova and Kessel managed Formula GP through their management of Formula VC as its managing partners.  Akhunova and Kessel purportedly formed Formula VC and Formula GP, in order to raise capital from a group of investors to invest in a diverse portfolio of start-up companies.  *Id.* at ¶ 1.

Between March 2012 and February 2013, Akhunova and Kessel met with Plaintiff's representatives to discuss a potential investment in Formula LP.  *Id.* at ¶ 17.  Throughout the negotiations, Kessel represented that: Formula LP would be an "exclusive, private club" for making investments in high-tech start-ups; it would raise approximately $60 million investment funds; and Kessel had the personal skill, ability, experiences, and industry connections to deliver on these promises.  *Id.* at ¶¶ 19, 71, 95, 105.

Plaintiff alleges that it agreed to become a limited partner of Formula LP, relying on Kessel's representations.  *Id.* at ¶ 23.  Plaintiff made an initial aggregate capital commitment of $20 million.  *Id.*  On February 25, 2013, Plaintiff executed the Amended and Restated Limited Partnership Agreement for Formula VC Fund I, L.P. (the LP Agreement).  *Id.*; Docket No. 34 Ex. A (LP Agreement).  The LP Agreement states that the purpose of Formula LP is "to invest a diversified portfolio of investments with the primary focus on early technology ventures."  Docket No. 34 Ex. A (LP Agreement) at § 3.1.  The LP Agreement also restricts Formula LP in the investments it can make and requires it to "seek to diversify its investment portfolio by investing in at least twelve (12) Portfolio Companies."  *Id.* at § 3.2.2.  The management fee was expressed as 2.5% of all contributions.  *Id.* at § 13.1.

Plaintiff argues that Kessel never intended to fulfill their promises but was only concerned with generating management fees and obtaining the prestige and profile of being venture capital fund managers for personal benefit.  Docket No. 84 (Motion) at 2.  Indeed, after Chassin became a limited partner of Formula LP, Akhunova and Kessel never obtained investments from any additional limited partners and never obtained additional capital commitments.  Docket No. 34 (First Amended Complaint) at ¶ 21.  Plaintiff further argues that Kessel misrepresented and misled Chassin regarding his ability to secure additional investments and limited partners.  *Id.*; Docket

2

No. 72 Ex. A (Settlement and Release Agreement).

Akhunova and Kessel also failed to satisfy their contractual obligations to invest in a diversified portfolio of at least twelve companies. Docket No. 34 (First Amended Complaint) at ¶ 21. Of Plaintiff's total $3,250,000 investment in Formula LP, only $2,416,918.98 has purportedly been invested in only two companies. *Id.* at ¶¶ 2-3. On April 29, 2013, Formula LP purportedly made its first investment, in the amount of $550,000, in a stock offering by a Swiss technology company called Nektoon AG and doing business as Squirro (Squirro). *Id.* at ¶ 31. However, Plaintiff alleges that the bank records of Formula LP do not show any transfer to Squirro, but rather to Akhunova's Global Innovation Access entity. *Id.* Moreover, the current general partner of Formula LP, Nicola Smith, and Akhunova declared that the investment in Squirro had no or negligible value from the outset because Squirro never had a viable business plan and was a failing enterprise. *See* Docket No. 85 (Declaration of Nicola Smith) at ¶ 11; Docket No. 72 Ex. A (Settlement and Release Agreement) at ¶ 5(d). Plaintiff alleges that $225,000 of the purported investment in Squirro, if it was made, was made at a time when Kessel was a director of Squirro and knew that it was in a financially precarious position. Docket No. 84 (Motion) at 3.

Formula LP made its second investment, in the amount of more than $1.6 million, in 500 Startups II, L.P. (500 Startups), an independent fund that does what Akhunova and Kessel promised their fund would do: invest in companies for a fee of its own. *Id.* at ¶¶ 3, 32.

For their service, Akhunova and Kessel paid Formula GP excessive management fees in the amount of $750,000 and expenses reimbursements of tens of thousands of dollars in contravention of the LP Agreement. *Id.* at ¶¶ 3, 31, 35, 40-42. In addition, Akhunova and Kessel failed to implement appropriate controls for the management of Formula LP's cash. *Id.* at ¶ 4. Moreover, Akhunova and Kessel failed to satisfy Formula GP's obligation under the LP Agreement to report to the limited partners about the fund's financial affairs and asset values. *Id.* at ¶ 2. During Formula GP's management of Formula LP, Formula GP provided Plaintiff with only two quarterly statements and no other financial reporting. *Id.* at ¶ 50.

As a result of Defendants' mismanagement, Formula LP ran out of cash in early 2014, jeopardizing the value of its largest asset: the fund was unable to satisfy its capital call obligations

1    to 500 Startups, risking default under the terms of its investment agreement.  *Id.* at ¶ 5.

2           After discussing the matter with Plaintiff, Akhunova and Kessel caused Formula GP to

3    resign its position of general partner of Formula LP on April 24, 2015.  IASO Ltd. (IASO)

4    replaced Formula GP.  *Id.* at ¶¶ 6, 69.

5    B.     Procedural Background

6           On May 21, 2015, Plaintiff filed its original Complaint against Formula GP, Formula VC,

7    Formula LP, and Akhunova.  Docket No. 1.  On June 22, 2015, Plaintiff voluntarily dismissed

8    Formula LP.  Docket No. 12.  On December 8, 2015, Parties filed a Stipulation to Motion to

9    Amend the Complaint and Permissive Joinder, in which Formula VC, Formula GP, and Akhunova

10   consented to the entry of the amended complaint and the joinder of Kessel.  Docket No. 31.  The

11   stipulation was granted on the same day.  Docket No. 33.

12          On December 9, 2015, Plaintiff filed the First Amended Complaint, naming Formula GP,

13   Formula VC, Akhunova, and Kessel as Defendants.  Docket No. 34 (First Amended Complaint).

14   It brought six causes of action: (1) fraud in the sale of securities under Securities and Exchange

15   Commission Rule 10b-5; (2) breach of contract; (3) deceit; (4) fraud in the sale of securities under

16   California Corporations Code section 25401; (5) breach of fiduciary duty; and (6) violation of

17   California Business and Professions Code section 17200.  *Id.* at ¶¶ 70-126.  Plaintiff caused a copy

18   of the First Amended Complaint, together with a summons, to be served upon Kessel on March 9,

19   2016, in accordance with the Hague Convention.  Docket No. 46 (Certificate of Service of First

20   Amended Complaint on Defendant Andrey Kessel).

21          On March 28, 2016, Kessel appeared in front of the Court through his counsel, Jessica

22   Taran.  Docket No. 42 (Notice of Appearance of Jessica Taran, Esq. on Behalf of Andrey Kessel).

23   On the same day, Kessel moved to dismiss, arguing that the Court cannot exercise personal

24   jurisdiction over him because he does not have sufficient contacts with California.  Docket No. 39

25   at 3.  In filing the motion to dismiss, Kessel did not challenge the adequacy of the service on him

26   or the allegations in the First Amended Complaint.  The Court denied the motion, finding personal

27   jurisdiction over all claims asserted against Kessel.  Docket No. 50.

28          Ten days after the denial order, Kessel fired Taran, and Taran subsequently sought to

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

withdraw as counsel.  Docket No. 53 (Jessica Taran's Notice of Motion and Motion to Withdraw as Counsel for Defendant Andrey Kessel).  Taran attached, to her withdrawal motion, Kessel's letter terminating her.  Docket No. 53 Ex. A.  In the letter, Kessel wrote

> I am satisfied on advice that under English law, which is where new proceedings would have to be brought in due course should the Claimant pursue its claims against me, that I would succeed on the merits.  Moreover, I understand that in California the Frow rule would be applicable in the context of any application or motion that might be made for a default judgement, should I not take any action or participate further in the proceedings, and is likely to prevent the immediate entry of such judgement. More importantly, any default judgement against me, if at some stage obtained in California, is unlikely to be upheld or enforced here as under English law the California court has no jurisdiction.

*Id.*

Under Civil Rule 12(a)(4),[1] Kessel was required to file a response by May 6, 2016.  Docket No. 84 (Motion) at 11.  However, to date, he has not filed a responsive pleading.  *Id.*  On May 13, 2016, the Clerk of the Court entered default against Kessel upon Plaintiff's request.  Docket No. 63.

On June 29, 2016, Plaintiff settled its claims with Defendants Akhunova, Formula GP, and Formula VC.  Docket No. 71.  On August 9, 2016, the Court approved the settlement, barring all claims against the settling Defendants.  Docket No. 75.  Plaintiff's claims against Kessel remain unresolved.

Plaintiff claims to have "little choice but to" bring the pending motion for default judgement before this Court because Kessel has refused to participate in the proceedings.  Docket No. 84 (Motion) at 12.  Plaintiff argues that Kessel was instrumental in fraudulently inducing

---

[1] Rule 12(a)(4) provides:

> Unless the court sets a different time, serving a motion under this rule alters these periods as follows:
>
> (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or
>
> (B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

United States District Court
For the Northern District of California

1  Chassin to invest in Formula LP and that Kessel mismanaged Formula LP in a way inconsistent

2  with his promises and his fiduciary duties.  *Id.* at 1.  Plaintiff's four causes of action in the motion

3  are: (1) fraud in the sale of securities under SEC Rule 10b-5; (2) deceit in violation of California

4  Civil Code section 1709; (3) fraud in the sale of securities under California Corporations Code

5  sections 25401, 25501, and 25504; and (4) breach of fiduciary duty.  *Id.*  Plaintiff seeks

6  $1,762,500 in damages, plus interest.  *Id.* at 25.

7  **III.   DISCUSSION**

8  A.    Entry of Default Judgment

9      1.    Jurisdiction

10      Courts have an "affirmative duty to look into its jurisdiction over both the subject matter

11  and the parties" when "entry of judgment is sought against a party who has failed to plead or

12  otherwise defend."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The Court exercises this duty

13  below.

14      a.    Subject Matter Jurisdiction

15      28 U.S.C.A. § 1331 provides: "The district courts shall have original jurisdiction of all

16  civil actions arising under the Constitution, laws, or treaties of the United States."  Section 27 of

17  the Securities Exchange Act provides: "The district courts of the United States and the United

18  States courts of any Territory or other place subject to the jurisdiction of the United States shall

19  have exclusive jurisdiction of violations of this chapter or the rules and regulations

20  thereunder . . . ."  15 U.S.C.A. § 78aa.

21      Under either statute, the Court has original jurisdiction over Plaintiff's claim for fraud in

22  the sale of securities in violation of Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under Section

23  10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 77b.

24      The Court also has jurisdiction over Plaintiff's state law claims: deceit in violation of

25  California Civil Code section 1709; fraud in the sale of securities under California Corporations

26  Code sections 25401, 25501, and 25504; and breach of fiduciary duty.  28 U.S.C. § 1367(a)

27  provides: "the district courts shall have supplemental jurisdiction over all other claims that are so

28  related to claims in the action within such original jurisdiction that they form part of the same case

6

or controversy under Article III of the United States Constitution." As the Court recognized in its order denying Kessel's motion to dismiss (the MTD Order), "All of the claims in Plaintiff's FAC (First Amended Complaint) share the same common nucleus of operative fact—they all relate to alleged promises Kessel and Akhunova made in soliciting Plaintiff's investment in Formula LP and their failure to fulfill those promises." Docket No. 50 at 15. Thus, under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the state law claims. *See CYA Oil & Gas Invs., LLC v. ISIS, LLC*, 2012 WL 1985295, at *2-3 (D. Ariz. June 4, 2012) (exercising supplemental jurisdiction over state claims for breach of contract and fiduciary duty because the claims could be traced to the alleged securities fraud that forms the basis of federal claims); *Sharp v. Arena Pharms., Inc.*, 2010 WL 5464918, at *1 (S.D. Cal. Dec. 29, 2010) (exercising supplemental jurisdiction over state claims because they concern the same misrepresentations made regarding the investment).

Thus, the Court has subject matter jurisdiction over the entire case.

> b.  Personal Jurisdiction

The Court's personal jurisdiction over Kessel has already been established by the MTD Order. Docket No. 50.

> 2.  Service

In addition to determining jurisdiction, courts must "assess the adequacy of the service of process on the party against whom default is requested" in deciding whether to grant or deny a default judgment. *Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001); *see DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 877 (N.D. Cal. Sept. 13, 2012).

The service upon Kessel was proper because it satisfied the requirements under the Federal Rules of Civil Procedure. Rule 4(f) provides that service on an individual in a foreign country is adequate if made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Kessel is an individual resident of the United Kingdom who resides at 28 Chesterton Road, Cambridge, CB4 3AZ, UK. Docket No. 34

7

United States District Court
For the Northern District of California

(First Amended Complaint) at ¶ 11.  On March 9, 2016, Plaintiff caused a copy of the First Amended Complaint, together with a summons, to be served on Kessel, and, on April 11, 2016, Plaintiff filed with the Court the certificate by the Foreign Process Section of the Central Authority of the United Kingdom showing that the document was served on Kessel in accordance with the Hague Convention.  Docket No. 46.  "Regardless of which rules apply, a plaintiff's proof of service constitutes prima facie evidence of valid service which can only be overcome by strong and convincing evidence." *Quach v. Cross*, 2004 U.S. Dist. Lexis 28983, at *10 (C.D. Cal. Dec. 2, 2004).  Kessel failed to provide any evidence that Plaintiff's service was inadequate.  In fact, Kessel's conduct provides contrary evidence: Kessel did not challenge the adequacy of service when he appeared in front of the Court to file his motion to dismiss for lack of personal jurisdiction.

   3.  <u>*Eitel* Factors</u>

    Since the Court finds that the service on Kessel was sufficient, the Court should determine whether to grant a default judgment on the merits of the case.  *See* Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation marks omitted).

    For the reasons stated below, the *Eitel* factors weigh in favor of entering default judgment.

    a.  <u>The Possibility of Prejudice to the Plaintiff</u>

    A plaintiff suffers prejudice when the plaintiff would be left without recourse for recovery

8

1   upon denial of entry of default judgment.  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D.

2   Cal. Oct. 1, 2014); *Phillip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal.

3   Dec. 31, 2003).

4          Here, Plaintiff will suffer prejudice if the Court does not enter default judgment because

5   Plaintiff would not be able to recover for the harm inflicted by Kessel.  The risk of prejudice is

6   heightened by Kessel's assertion that Plaintiff would not be able to recover under English law.

7   Docket No. 53 Ex. A.

8                    b.    <u>The Merits of Plaintiff's Substantive Claim and c. The Sufficiency of the</u>

9                          <u>Complaint</u>

10          The second and third *Eitel* factors "require that a plaintiff state a claim on which the

11   [plaintiff] may recover."  *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D.

12   Cal. 2002); *see also IO Grp., Inc. v. Jordan*, 708 F. Supp. 2d 989, 997-1000 (N.D. Cal. 2010)

13   (applying the second and third *Eitel* Factors by determining whether factual allegations in the

14   complaint, taken as true, adequately pled each cause of action).

15          Plaintiff seeks default judgment against Kessel on the following claims: a. fraud in the sale

16   of securities under SEC Rule 10b-5; b. deceit in violation of California Civil Code section 1709; c.

17   fraud in the sale of securities under California Corporations Code sections 25401, 25501 and

18   25504; and d. breach of fiduciary duty.  Docket No. 84 (Motion).

19                    i.    <u>Fraud in the Sale of Securities Under SEC Rule 10b-5</u>

20          Rule 10b–5 makes it unlawful

21                  (a) To employ any device, scheme, or artifice to defraud,

22                  (b) To make any untrue statement of a material fact or to omit to
23                  state a material fact necessary in order to make the statements made,
                    in the light of the circumstances under which they were made, not
24                  misleading, or

25                  (c) To engage in any act, practice, or course of business which
                    operates or would operate as a fraud or deceit upon any person in
26                  connection with the purchase or sale of any security.

27   17 CFR § 240.10b–5.

28          To prevail on its fraud claim under Rule 10b-5, Plaintiff must allege: "(1) a material

9

**United States District Court**
For the Northern District of California

misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).  Plaintiff's 10b-5 claim is subject to the heightened pleading standard imposed by the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u–4(b)(1). "Congress enacted the PSLRA to deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999).  Since Chassin is a private plaintiff, it is subject to the raised pleading standards under the PSLRA.

(a)      A Material Misrepresentation or Omission of Fact

Under the heightened pleading standard of the PSLRA, complaints alleging misrepresentations under Rule 10b–5 must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 741 (9th Cir. 2008).

In the First Amended Complaint, Plaintiff alleged that Kessel misrepresented that

> Formula LP would invest in a diversified portfolio of technology start-up companies numbering in the dozens; that Formula LP would be a private investment club of multiple limited partner investors; that Formula LP would raise approximately $60 million in investment funds from investors; and that Akhunova and Kessel had the skill and experience to deliver on these commitments.

Docket No. 34 (First Amended Complaint) at ¶¶ 71-72.  Plaintiff also articulated the reason for the falsity of these representations: it alleged that "Akhunova and Kessel never intended to perform the promises they made concerning the fund's management," *id.* at ¶ 72, and alleged that, indeed, Akhunova and Kessel "never obtained additional investments, never provided any evidence that they sought to obtain additional investment, never obtained any capital commitments (other than the $20 million pledged by Chassin; an amount that was subsequently reduced), and never fulfilled their promises and contractual obligations to invest in a diversified portfolio of at least twelve

**United States District Court**
For the Northern District of California

companies." *Id.* at ¶ 21. Plaintiff also alleged and Akhunova declared that "Mr. Kessel did not have the experience or connections necessary to find appropriate additional limited partners for the Fund" and that "Mr. Kessel did not have access to or the ability to evaluate appropriate investments," Docket No. 72 Ex. A (Settlement and Release Agreement) at ¶ 5(a), (b); Docket No. 34 (First Amended Complaint) at ¶ 75.

A misrepresentation is material if "there is a reasonable likelihood" that a reasonable investor "would consider it important" in making an investment decision. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1266 (9th Cir.1979)**.** Kessel's misrepresentations are material because they are relevant to Chassin's investment in Formula LP and appear important to any reasonable investor's investment decision under the circumstances. Indeed, Plaintiff alleged in the First Amended Complaint that it relied on the misrepresentations in purchasing its interest in Formula LP. Docket No. 34 (First Amended Complaint) at ¶ 106.

Thus, Plaintiff's allegations establish the first element of the fraud claim under Rule 10b-5.

(b)    Scienter

The PSLRA requires Plaintiff to "state with particularity facts giving rise to a strong inference that [Kessel] acted with [scienter]." 15 U.S.C. § 78u–4(b)(2) (2002). Plaintiff must "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). "To qualify as 'strong' . . . , an inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007). Although Plaintiff need not allege facts giving rise to an "irrefutable" inference of scienter and the complaint must be viewed "holistically," the plaintiff "must plead facts rendering an inference of scienter at *least as likely* as any plausible opposing inference." *Id.* at 324, 326, 328 (emphasis in original).

Plaintiff established scienter by alleging that Kessel "made the statements with knowledge of their falsity or with reckless disregard for the truth." Docket No. 34 (First Amended

United States District Court
For the Northern District of California

Complaint) at ¶ 72.  In fact, Kessel never sought out additional limited partners and failed to properly invest Plaintiff's investment in Formula LP.  Moreover, contrary to Kessel's representations to Plaintiff in soliciting investment, Kessel had no ability or connections to deliver on his promises, as confirmed by Akhunova in her declaration.  Furthermore, Kessel and Akhunova pocketed $875,000 in management fees in excess of their contractual entitlement.  These allegations demonstrate not only that Kessel knew the falsity of his statements but also that Kessel intended to fraudulently induce Plaintiff to invest in Formula LP.

(c)    A Connection With the Purchase or Sale of a Security

Section 10(b) of the Securities Exchange Act of 1934 defines the term "security" as including "investment contract."  15 U.S.C.A. § 77b(a)(1).  "An investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . ." *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946).  Using this definition of investment contract, the Ninth Circuit  has held in *McGreghar Land Co. v. Meguiar*, 521 F.2d 822, 824 (9th Cir. 1975) that the limited partnership interest purchased by the plaintiff constituted an "investment contract."

Here, Plaintiff invested $3,250,000 in Formula LP, a fund that was promised by Kessel to be a club for making investments in high-tech start-ups that would raise approximately $60 million investment funds.  Docket No. 34 (First Amended Complaint) at ¶¶ 17, 20.  Plaintiff was also led to expect profits solely from the efforts of a third party.  Pursuant to the LP Agreement, Plaintiff, as a limited partner, did not conduct the business of Formula LP, and relied solely on the efforts of the general partner, Formula GP.  LP Agreement § 4.6.  Formula GP, in turn, was managed by Kessel and Akhunova.  Docket No. 34 (First Amended Complaint) at ¶ 10-11.  Thus, the limited partnership interest Plaintiff bought in exchange for its investment constitutes a security.

Since Kessel's statements were made when he was seeking investments in Formula LP and selling the interest in the limited partnership, the First Amended Complaint adequately pleads that misrepresentation occurred in connection with the purchase or sale of a security.

1

(d)     Transaction Causation and Loss Causation

2      The causation element of a claim for securities fraud under the Exchange Act "can be

3   broken down into two necessary elements: actual cause (transaction causation) and proximate

4   cause (loss causation).  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005).  "To prove

5   transaction causation, the plaintiff must show that, but for the fraud, the plaintiff would not have

6   engaged in the transaction at issue," and "to prove loss causation, the plaintiff must demonstrate a

7   causal connection between the deceptive acts that form the basis for the claim of securities fraud

8   and the injury suffered by the plaintiff.  *Id.*  Loss causation does not require the plaintiff to show

9   "that a misrepresentation was the sole reason for the investment's decline in value".  *Id.* (quoting

10  *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 n.5 (11th Cir.1997)).  "[A]s long as the

11  misrepresentation is one substantial cause of the investment's decline in value, other contributing

12  forces will not bar recovery under the loss causation requirement" but will play a role "in

13  determining recoverable damages."  *Id.*

14      Plaintiff established transaction causation by alleging in the First Amended Complaint that

15  it

16          relied on . . . [Kessel and Akhunova's] statements in making the
            decision to invest in Formula LP and in funding capital calls by
17          Formula LP.  Had Chassin been aware that Formula LP would not
            obtain Limited Partners other than Chassin; that Formula LP would
18          not be an investment club; and that Akhunova and Kessel lacked the
            skill and experience to manage the fund in a professional way and in
19          accordance with their representations, Chassin would not have
            invested in Formula LP.
20

21  Docket No. 34 (First Amended Complaint) at ¶ 75.

22      Plaintiff also established loss causation.  The falsity of Defendants' representation that

23  Formula LP would invest in a diversified portfolio caused loss in the value of Plaintiff's interests

24  in Formula LP because failure to diversify increases the volatility of the fund; here that volatility

25  resulted in a loss.  Same is true for the falsity of Defendants' representation that Akhunova and

26  Kessel have the skill and experience to deliver on their promises.  Funds managed by

27  underqualified managers are likely to underperform.  Again, that underperformance proved to be

28  costly.

13

(e)   Economic Loss

Plaintiff alleged in the First Amended Complaint that it was harmed as a result of its investment in Formula LP.  Amended Complaint ¶ 76.  Reading the complaint as a whole, the economic loss arises from the reduced value of Plaintiff's interests in Formula LP.

ii.   Deceit in Violation of California Civil Code Section 1709

The elements of a tort action for deceit under section 1709 of California Civil Code are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 909 P.2d 981, 984-85 (Cal. 1996).

(a)   Misrepresentation

For the reasons stated in Part III.A.3.b.i(a), the Court finds that Plaintiff satisfied the misrepresentation prong of its section 1709 claim.

(b)   Knowledge of Falsity

For the reasons stated in Part III.A.3.b.i(b), the Court finds that Plaintiff satisfied the knowledge of falsity prong of the section 1709 claim.

(c)   Intent to Defraud

For the reasons stated in Part III.A.3.b.i(b), the Court finds that Plaintiff satisfied the intent to defraud prong of the section 1709 claim.

(d)   Justifiable Reliance

Plaintiff alleged in the First Amended Complaint that

> Chassin relied on these statements in making the decision to invest in Formula LP and in funding capital calls by Formula LP. Had Chassin been aware that Formula LP would not obtain limited partners other than Chassin; that Formula LP would not be an investment club; and that Akhunova and Kessel lacked the skill and experience to manage the fund in a professional way and in accordance with their representations, Chassin would not have invested in Formula LP.

Docket No. 34 (First Amended Complaint) at ¶ 98.  Moreover, nothing suggests that there was any reason to doubt the validity of Kessel and Akhnuova's statements.  Thus, Plaintiff justifiably relied on their statements.

**United States District Court**
For the Northern District of California

(e)      Resulting Damage

Under California law, "'[a] complete causal relationship between the fraud or deceit and the plaintiff's damages is required.'"  *Small v. Fritz Cos.*, 65 P.3d 1255 (Cal. 2003) (internal quotation marks omitted) (quoting *Williams v. Wraxall*, 39 Cal.Rptr.2d 658 (1995)).

For the same reasons stated in III.A.3.b.i(d) and III.A.3.b.i(e), the Court finds that Plaintiff satisfied the resulting damage prong of the section 1709 claim.

iii.      Fraud in the Sale of Securities Under California Corporations Code

Sections 25401, 25501, 25504

Section 25401 makes it illegal to

> offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal. Corp. Code § 25401.

Section 25501 establishes civil liability for a violation of section 25401:

> Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission.

Cal. Corp. Code § 25501.

In addition to the primary or direct civil liability established in section 25501, the legislature has extended liability for a violation of section 25401 to specified secondary actors via section 25504, which provides

> Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction

15

constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Cal. Corp. Code § 25504.

Formula LP, which directly sold limited partnership interests to Plaintiff, is not named as defendant in the First Amended Complaint.  However, this does not preclude the Court from imposing liability on Kessel pursuant to section 25504.  *Hayden v. Wang*, 2013 U.S. Dist. LEXIS 161892, at *6-7 (N.D. Cal. Nov. 13, 2013); *see also Moss v. Kroner*, 129 Cal. Rptr. 3d 220, 221-22, 232 (Cal. Ct. App. 2011) (holding that the plaintiff stated a viable cause of action against defendant for secondary liability, despite not bringing an action against the primary violator).  Thus, the Court can impose liability on Kessel for violation of section 25401 by means of section 25504.

To assert a viable cause of action for secondary liability under section 25504, plaintiff must plead facts that:  i. the defendant offered and sold a security; ii. by means of communications that contained untrue statements of material fact or failed to state material facts necessary to make the statements not misleading; iii. the defendant was a secondary actor to the issuer of the security; and iv. the defendant possessed knowledge of the true facts.  *Moss*, 129 Cal. Rptr. 3d.

(a)     The Defendant Offered and Sold a Security

California's Corporate Securities Act of 1968 defines "security" as including "investment contract."  Cal. Corp. Code § 25019.  In defining "investment contract," California courts have applied two distinct tests: the risk capital test; and the federal test described in *SEC v. W.J. Howey Co.* (1946) 328 U.S. 293, 298-299.  *Consol. Mgmt. Grp., LLC v. Dep't of Corps.*, 75 Cal. Rptr. 3d 795, 805 (Cal. Ct. App. 2008).  A transaction is a security if it satisfies either test.  *Reiswig v. Department of Corporations*, 50 Cal.Rptr.3d 391 (Cal. Ct. App. 2006).  Under the federal test, an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."  *Howey*, 328 U.S. at 298-99.

For the reasons stated in Part III.A.3.b.i(c), the Court finds that Plaintiff established that

16

1   Kessel offered and sold a security as defined under California's Corporate Securities Act of 1968.

2                           (b)        By Means of Communications That Contained Untrue

3                                      Statements of Material Fact or Failed to State Material Facts

4                                      Necessary to Make the Statements Not Misleading

5          Under California law, a fact is material "if there is a substantial likelihood that, under all

6   the circumstances, a reasonable investor would consider it important in reaching an investment

7   decision." *Ins. Underwriters Clearing House v. Natomas Co.*, 228 Cal. Rptr. 449, 453 (Cal. Ct.

8   App. 1986).

9          For the reasons stated in Part III.A.3.b.i(a), the Court finds that Plaintiff established the

10  second prong of its section 25504 claim.

11                          (c)        The Defendant was a Secondary Actor to the Issuer of the

12                                     Security

13         Section 25504 imposes joint and several liability on "every person who directly or

14  indirectly controls" an issuer or other seller liable under section 25501 unless the controlling

15  person had no knowledge of the misrepresentation.  Cal. Corp. Code § 25504.  "Control" for

16  purposes of section 25504 means "the possession, directly or indirectly, of the power to direct or

17  cause the direction of the management and policies."  *In re Wash. Mut., Inc.*, 462 B.R. 137, 141-

18  42 (Bankr.D. Del. 2011) (quoting *Rochez Bros. Inc. v. Rhoades*, 527 F.2d 880, 890 (3d Cir.

19  1975)).

20         Plaintiff alleged in the First Amended Complaint that Kessel formed and at all relevant

21  times managed Formula LP. Docket No. 34 (First Amended Complaint) at ¶¶ 1, 31-32.  Thus,

22  Plaintiff established that Kessel was a secondary actor to the issuer of a security.

23                          (d)        The Defendant Possessed Knowledge of the True Facts

24         For the reasons stated in Part III.A.3.b.i(b), the Court finds that Plaintiff established that

25  Kessel possessed knowledge of the true facts.

26                       iv.        Breach of Fiduciary Duty

27         Because Formula LP is a Cayman Islands limited partnership, the law of the Cayman

28  Islands governs Plaintiff's breach of fiduciary duty claim.  Cal. Corp. Code § 15909.01 ("(a) The

laws of the state or other jurisdiction under which a foreign limited partnership is organized
govern relations among the partners of the foreign limited partnership and between the partners
and the foreign limited partnership and the liability of partners as partners for an obligation of the
foreign limited partnership, except as to foreign limited liability limited partnerships, which shall
be treated as if they were foreign limited partnerships.").  The elements of a cause of action for
breach of fiduciary duty under Cayman Islands law are: "(1) a fiduciary duty; (2) a breach of the
duty; and (3) a showing that the breach caused a loss to the beneficiary of the duty or resulted in a
profit for the fiduciary."  *In re Refco Inc. Secs. Litig.*, 826 F. Supp. 2d 478, 500 (S.D.N.Y. 2011)
(citing *Boardman v. Phipps*, [1967] 2 A[1]C 46, 47F (U.K.)).

      Plaintiff adequately established each of these elements.

      First, Kessel owes fiduciary duty to Plaintiff by contract.  The limited partnership
agreement expressly imposes fiduciary duties on Key Managers and designates Kessel as one of
the two "Key Managers" of Formula LP.  Docket No. 88 Ex. A (Partnership Agreement) at §
12.3.5; Docket No. 88 Ex. A (Addendum 1 to Partnership Agreement).  Under Cayman Islands
law, "no reason is suggested why a principal of a general partner cannot assume fiduciary duties to
the limited partners."  *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 475 F.
Supp. 2d 456, 462 (S.D.N.Y. 2007).

      Second, Kessel breached his fiduciary duty by "failing to put into place appropriate
controls concerning Formula LP's cash," causing Formula LP "to pay management fees and
reimburse expenses in excess of those set forth in or permitted by the LP Agreement," "fail[ing] to
meet the fund objectives stated in connection with the solicitation of Chassin's investment in the
fund and/or as set forth in the LP Agreement," and "failing to satisfy the reporting requirements
set forth in the LP Agreement."  Docket No. 34 (First Amended Complaint) at ¶¶ 120-122.

      Third, "[a]s a result of . . . Kessel's conduct . . . , Formula LP was left with inadequate
capital to meet its capital obligations in respect of 500 Startups, thereby jeopardizing its primary
asset, and to execute its business plan."  *Id.* at ¶ 123.

          d.      <u>The Sum of Money at Stake in the Action</u>

      "When the money at stake in the litigation is substantial or unreasonable, default judgment

1   is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, 2012 WL 380304, at *4 (N.D. Cal. Jan.

2   7, 2012).  However, when "the sum of money at stake is tailored to the specific misconduct of the

3   defendant, default judgment may be appropriate." *Id.*; *Walters v. Statewide Concrete Barrier*.

4   2005 U.S. Dist. LEXIS 49433, at *9-10 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue

5   is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is

6   warranted.")

7          Here, Plaintiffs seek $1,762,500 in damages, plus interest.  This amount is not

8   insignificant.  However, this estimate is tailored to the specific misconduct of Defendants because

9   Plaintiff seeks only compensatory damages for the reduced value of its limited partnership interest.

10                    e.       The Possibility of a Dispute Concerning Material Facts

11         Because Kessel has defaulted despite receiving proper service of process, there is little to

12  suggest that there is a possibility of dispute concerning material facts.  *See Transamerica Life Ins.*

13  *Co. v. Estate of Ward*, 2011 WL 5241257, at *4 (E.D. Cal. Oct. 31, 2011) (finding that "there is a

14  very low likelihood that any genuine issue of material fact exists" because "the court [assumes]

15  the truth of well-pleaded facts in the complaint following the clerk's entry of default").  Moreover,

16  Kessel did not raise any issue concerning material facts when he appeared in front of the Court

17  through counsel on March 28, 2016.

18                    f.       Whether the Default was Due to Excusable Neglect

19         This factor weighs in favor of entering default judgment where the defendant has

20  intentionally defaulted.  *Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118,

21  1144 (N.D. Cal. Sept. 21, 2009).  Kessel has intentionally defaulted.  Kessel's letter terminating

22  his counsel demonstrates that Kessel anticipated the consequences of not taking or participating

23  further in the proceedings and yet deliberately chose to default for strategic reasons.  Moreover,

24  there is no other indication that Kessel defaulted due to excusable neglect.

25                    g.       The Strong Policy Underlying the Federal Rules of Civil Procedure

26                             Favoring Decisions on the Merits

27         This factor weighs against entering default judgment because of the policy that "[c]ases

28  should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.

United States District Court

For the Northern District of California

1    However, the mere existence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing

2    alone, is not dispositive." *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3. Moreover,

3    Kessel's "failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not

4    impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Under Fed. R. Civ. P. 55(a), courts are allowed

5    to terminate a case before hearing the merits whenever a defendant fails to defend an action. *Id.*

6    Thus, the preference for deciding on the merits does not preclude the Court from entering default

7    judgment against Kessel.

8    B.    Requested Relief

9          Where the court finds default judgment to be appropriate, factual allegations of the

10   complaint, except those relating to damages, are taken as true. *Geddes v. United Fin. Group*, 559

11   F.2d 557, 560 (9th Cir.1977).

12         In the pending motion, Plaintiff seeks: (i) compensatory damages for fraud in violation

13   SEC Rule 10b-5; (ii) compensatory damages for deceit in violation of California Civil Code

14   section 1709; (iii) compensatory damages for fraud in the sale of securities under California

15   Corporations Code sections 25401, 25501, 25504; and (iv) damages for breach of fiduciary duty.

16   Docket No. 84 (Motion) at 24-25. Instead of seeking multiple damages for each of these claims,

17   Plaintiff seeks a single damage of $1,762,500 based on any one of the first three causes of action.

18   *Id.* at 25.

19         Indeed, any one of the first three causes of action authorizes this Court to grant

20   compensatory damages.

21         First, courts have generally used an "out-of-pocket" measure of damages in securities fraud

22   actions premised on a seller's fraud, although, in some circumstances, courts have allowed the

23   option of rescission. *Randall v. Loftsgaarden*, 478 U.S. 647, 662 (1986). Under the out-of-pocket

24   standard, a defrauded purchaser is entitled to recover the difference between the price he or she

25   paid for a security and the actual value of that security at the time of the purchase, plus interest on

26   the difference. This measure of damages is "purely compensatory, and it focuses on the plaintiff's

27   actual loss, rather than on his potential gain." *DCD Programs, Ltd. v. Leighton*, 90 F.3d 1442,

28   1447 (9th Cir. 1996) (citation omitted).

**United States District Court**
For the Northern District of California

1    Second, under California Civil Code section 1709, a defendant who commits deceit is

2    liable for any damage which the plaintiff thereby suffers.  Section 1709 provides: "Fraudulent

3    deceit. One who willfully deceives another with intent to induce him to alter his position to his

4    injury or risk, is liable for any damage which he thereby suffers."  Cal Civ. Code § 1709; *Smith v.*

5    *Rickards*, 308 P.2d 758, 762 (Cal. Ct. App. 1957) ("The court allowed interest on this aggregate

6    from the service of notice of rescission.  It is statutorily declared by Civil Code, Section 1709 that

7    one who willfully deceives another with intent to induce him to alter his position to his injury or

8    risk is liable for any damage which he thereby suffers.").

9    Third, California Corporations Code section 25501 provides:

10          Damages recoverable under this section by a purchaser shall be an
11          amount equal to the difference between (a) the price at which the
             security was bought plus interest at the legal rate from the date of
12          purchase and (b) the value of the security at the time it was disposed
             of by the plaintiff plus the amount of any income received on the
13          security by the plaintiff.

14    Courts have interpreted sections 25501 and 25504 as holding those secondarily liable under the

15    statutes to be "liable for the money required to make the plaintiff whole."  *Moss*, 129 Cal. Rptr. 3d

16    at 227, 231-32.

17    Plaintiff calculated the compensatory damages of $1,762,500 by deducting, from its total

18    investment amount of $3,250,000, Formula LP's investment of $1,387,500 in 500 Startups and

19    $100,000 it will recover from Defendants Akhunova, Formula GP, and Formula VC.  Docket No.

20    84 (Motion) at 24-25.  The Court finds Plaintiff's calculation to be a reasonable estimate of

21    compensatory damages.  The only two investments made by Formula LP are those in 500 Startups

22    and Squirro, and the fund has not been worth anything other than these investments since Kessel

23    and Akhunova's mismanagement of Formula LP caused it to run out of cash in early 2014.

24    Docket No. 84 (Motion) at 3, 6-10.  Moreover, Formula LP's investment in Squirro has no value

25    because Squirro never had a viable business plan and has been a failing enterprise with severe

26    undercapitalization.  Docket No. 84 (Motion) at 2-3; Docket No. 85 (Declaration of Nicola Smith)

27    at ¶¶ 8-11.

28    Plaintiff also seeks interest in addition to the compensatory damages.  Docket No. 84

1   (Motion) at 24-25.

2       With respect to its Rule 10b-5 claim, Plaintiff does not specify what type of interest it is

3   seeking or any basis for seeking the interest.  Docket No. 84 Ex. A at 1.  With respect to the deceit

4   claim under California Civil Code section 1709, Plaintiff seeks prejudgment interest from March

5   20, 2013 through the date of this Judgment at the rate of 7% per annum (simple interest) in

6   accordance with California Civil Code section 3288 and California Constitution article XV, § 1.

7   *Id.*  With respect to the fraud claim under California Corporations Code section 25401, seeks

8   prejudgment interest from March 20, 2013 through the date of this Judgment at the rate of 7% per

9   annum (simple interest) in accordance with *Boam v. Trident Financial Corp.*, 6 Cal. App. 4th 738

10  (1992) (holding that California Corporations Code section 25501 requires an award of

11  prejudgment interest to plaintiffs).  *Id.* at 1-2.  With respect to the breach of fiduciary duty claim,

12  Plaintiff does not specify what type of interest it is seeking or any basis for seeking the interest.

13  *Id.* at 2.

14      Where there are pendent state claims in addition to federal claims, state law governs

15  entitlement to prejudgment interest and its computation under the state claims, unless preempted

16  by federal law.  As the court noted in *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, 2009

17  WL 565568 (E.D. Cal. Mar. 5, 2009),

18          The precise basis of a federal court's jurisdiction over a state law
            claim is irrelevant for *Erie* purposes; where state law provides the
19          rule of decision, it is the duty of federal courts to ascertain and apply
            that law.  Prejudgment interest is a substantive part of a plaintiff's
20          claim, and not merely a procedural mechanism; thus, state law
            governs entitlement to it as well as its computation, unless
21          preempted by federal law.

22  *Id.* at *8 (citing *In re Exxon Valdez*, 484 F.3d 1098, 1100-01 (9th Cir. 2007).  Here, Plaintiff

23  brought pendent state claims in addition to the Rule 10b-5 claim.  Thus, California law governs

24  Plaintiff's entitlement to interest and its computation with respect to Plaintiff's deceit and fraud

25  claims brought under California law.

26      Under California law, Plaintiff is entitled to interest.  California Civil Code section 3288

27  provides: "In an action for the breach of an obligation not arising from contract, and in every case

28  of oppression, fraud, or malice, interest may be given, in the discretion of the jury."  *See Greater*

22

*Westchester Homeowners Ass'n v. City of Los Angeles*, 603 P.2d 1329 (Cal. 1979) ("[S]ection

3288 permits discretionary prejudgment interest for unliquidated tort claims.").  Courts have

interpreted "in the discretion of the jury" to mean in the discretion of a trier of fact.  *O2 Micro*

*Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1076 (N.D. Cal. Mar. 9, 2006); *see*

*Michelson v. Hamada*, 36 Cal.Rptr.2d 343, 353 (Cal. Ct. App. 1994).

      The Court applies the prejudgment interest rate of 7% per annum.  Article XV, section 1 of

the California Constitution provides:

> The rate of interest upon a judgment rendered in any court of this
> state shall be set by the Legislature at not more than 10 percent per
> annum. Such rate may be variable and based upon interest rates
> charged by federal agencies or economic indicators, or both.
>
> In the absence of the setting of such rate by the Legislature, the rate
> of interest on any judgment rendered in any court of the state shall
> be 7 percent per annum.

Since there is no relevant legislative act providing an alternative interest rate, the appropriate rate

is the constitutional rate of 7%.  *See 3A Entm't Ltd. v. Constant Entm't, Inc.*, 2009 WL 248261, at

*6 (N.D. Cal. Jan. 30, 2009) ("Since there is no relevant legislative act specifying a rate of

prejudgment interest for a fraud claim, the Court applies the constitutional rate of 7% from the

date this action was filed.").

      Plaintiff seeks to apply the interest from March 20, 2013 through the date of the Court's

judgment.  Docket No. 84 Ex. A at 1-2.  March 20, 2013 is when Formula LP called $2 million of

Chassin's $20 million commitment and Chassin funded the capital contribution.  Docket No. 34

(First Amended Complaint) at ¶ 30.  The Court applies the interest to the time frame suggested by

Plaintiff because March 20, 2013 is the date on which Plaintiff made the investment into Formula

LP, an investment made because of the fraud committed by Kessel.  *See Koehler v. Pulvers*, 614

F. Supp. 829, 850 (S.D. Cal. July 9, 1985) ("Prejudgment interest to investors defrauded under the

federal securities law would be calculated from date of investment."); *Golden State Transit Corp.*

*v. City of Los Angeles*, 773 F. Supp. 204, 220 (C.D. Cal. Aug. 23, 1991) ("This Court holds that

prejudgment interest should be calculated until the entry of judgment on the jury verdict, which

occurred on June 24, 1991.").

# IV.   CONCLUSION

For the foregoing reasons, the Court orders as follows:

       1.   **ORDERS** a default judgment against Defendant Kessel; and

       2.   **GRANTS** Plaintiff's request for compensatory damages of $1,762,500, plus prejudgment interest from March 20, 2013 through the date of this judgment at the rate of 7% per annum.

This order disposes of Docket No. 84.

**IT IS SO ORDERED**.

Dated: January 6, 2017

_____
EDWARD M. CHEN
United States District Judge